If I may, Your Honor, I'd like to divide my time of five minutes, save five minutes for reply. All right. Counsel, could you please state your name for the record? Yes. Edward Ord for Mr. Lee. All right. Please be reminded that the time shown on the clock is your total time remaining. Yes. All right. Well, Your Honor, I'd just like to say that we laid things out pretty thoroughly in our brief, but there is some confusion. The compliance here was not only was not voluntary, but the 982 domain was issued first. That's very broad. It says that if you don't produce any record, foreign record described in this notice, it's suppressed by act of Congress. So we were complying in protest with 982 and not the summons. That's the first thing that's incorrect here. Number two, as indicated in our brief, once the IRS issues a summons, it's no longer voluntary because summons are not allowed to be used unless the taxpayer is not giving them what the IRS wants. And I cited the Nice case for that. So this idea that we voluntarily Counsel, the Court has made pretty clear that you do not have to do this, that the summons is not self-executing. And thus, it requires enforcement from the district court, which the IRS never obtained because your client provided the documents first. With the 982, not the summons, and the — you're right, the summons is not self-executing. But we still had a right to seek suppression in return of those records. That's what the Church of Scientology case is all about. And you don't need an enforcement order to be able to seek suppression in return. Why isn't that an argument to make in the context of the other litigation that your client has pending? In other words, you would argue to the judges in those cases that this was a compulsory disclosure, not a voluntary disclosure, and it should be suppressed in the context of those cases. Okay. First of all, I think I cited the Cardwell case to you. And I've given you some others from the Ninth Circuit. And they allow where there's been a voluntary turnover of testimony or records, even without a summons, you can still sue to get suppression in return. So the fact that the government has illegally obtained the records and the testimony, we have a right to suppression in return. And what the Church of Scientology case said was that just because you turn over the tapes doesn't mean that the case is moot because — But, Counsel, in the Scientology case, the district court did enter an order enforcing compliance with the summons. Yes. But you didn't have such an order here. No. Okay. Then it appears that you've complied voluntarily since you were not compelled by the district court. No, Your Honor. You put the IRS to the test by forcing them to issue a summons and then seek enforcement of the district court. You never got to the point where the district court forced you to turn over the documents. Instead, your client turned over the documents. In the way that this is structured, the statute is structured, and in the way that the cases make it appear, that makes it look like your client provided it voluntarily. I understand that this is a coercive atmosphere, but there's a difference between being in a coercive atmosphere and having been formally coerced. Well, Your Honor, I believe being sued in federal court is coercive, number one. Number two, when you don't comply with the summons, you can be prosecuted. It can be a criminal misdemeanor. That scares people. It scares taxpayers. It scares me. Also — and this is all in Reese v. Kaplan — also, you can be arrested for not complying with the summons. So this idea that you have to stonewall everything and go get a court order, I think is illusionary and is not required. The compulsion is the summons and the lawsuit. And you don't have to go to a jury verdict in the lawsuit to say that you're voluntarily going along with things. I think it's a very important distinction. Did you indicate to the IRS or to the district court that you had a reservation of your rights to seek suppression or anything? Yes. How did you indicate that? In the motions and the declarations and the grounds where the — all these things we've raised in our brief here. As to why — Did you do that after you provided the documents? So at the time that you provided the documents, did you indicate that you were providing them to the IRS with some kind of a reservation of rights? I don't know whether a reservation of rights would be effective, but I'm asking whether you tried to do that. Most of the compliance, involuntary compliance, came after the lawsuit was filed. And we'd answered because we were complying with the 982 request. Yeah. My question is, when you provided the documents to the IRS, did you attach, for example, a cover letter that said, we're providing these documents to you, however, we're going to attempt to reserve our rights to seek suppression and return? There probably isn't just any one letter, but we made all these objections with an eye towards suppression and return. But we vigorously objected to the whole process. And if you look in the deposition that they took, it's all in the deposition there, all our objections. But, yes, we reserved our right to suppression and return. But we didn't write one letter in saying that. That was — what we focused on were the grounds upon which suppression and return should be granted. And if the court had given us a hearing, I think we would have gotten suppression and return. You didn't ask the IRS if they would stipulate to allowing you to proceed with — to giving them the documents so that they would be satisfied in the interim they could proceed with whatever they needed to do and you could still seek suppression and return later on. Yes, Your Honor. I tried to get the government to stipulate to that. And what did the government say? They refused to do it. Okay. And that's why they moved to dismiss, because they weren't willing to do that. And, indeed, in the refund litigation, they're now saying that we have no right. Did you — did you ask the government to enter into that stipulation prior to providing the documents? Yes. It's all kind of hazy now, but, yes, I did. But you still provided the documents anyway, without — without the stipulation. Yes, because of 982. In other words, under 982 — and you've got to remember, 982 goes beyond custody, care, and possession. Any foreign record described in there, if you don't produce it, whether you have control or not, it's suppressed. So it's black — it's legal blackmail. You have to do it. Counsel, did you want to save some time for rebuttal? Yes. Because you're down to two minutes. Thank you. Thank you, Your Honor, and may it please the Court. Theodore Lee had a clear choice in the summons enforcement proceeding. He could have complied with the summons, or if he thought it was invalid, he could have gone forward with the adversary proceeding. And then it would be followed by a court order one way or the other granting or denying enforcement. So what's your response to opposing counsel's position that the fact there was a request for foreign documents made that — made it involuntary? No, Your Honor, it's not involuntary. I mean, what the FDR does is it's a prediscovery tool. It sort of lights a fire under a taxpayer and gives them 90 days to either substantially comply or to bring a proceeding in which they can seek to quash that petition, and that's what he did. And I — my understanding of the FDR process is that ultimately that case was put in abeyance while they were waiting to see what happened in the summons case and that the documents were provided in the summons proceeding. And all of the stipulations in the summons proceeding indicate that — indicate that he was complying with the summons and he was testifying and producing documents. And then ultimately the FDR case was dismissed because he had complied with the summons. So I think it's — my understanding is that it's the flip side of what — of what he said. In any event — in any event, he provided the documents. And so either way, you know, it was voluntary. There was no order in the FDR case. There was no order in the summons case requiring him to do so. So the FDR request is not self-executing either? No, it's not. And it's not something that the government can go to court to try to enforce. It has to wait to see if a taxpayer goes to court to quash the petition. Then it can sort of cross-petition for enforcement. Counsel, why can't the — why is it in the IRS's interest to deem this voluntary and refuse to proceed with some kind of a suppression and return policy? I mean, it seems to me that the government is putting them to a really difficult choice and maybe putting yourselves to a choice that you shouldn't be doing. In other words, why wouldn't we want to encourage early production of these documents as long as they can reserve their rights to challenge it later on? Well, Your Honor, I don't — there's nothing in the legal authority that certainly doesn't cite any that says there's something wrong with the government petitioning to enforce the summons. I mean, it's a little — Not that. But once he decides to provide this, I'm just a little surprised that you wouldn't want to encourage sort of the early production of those documents. In other words, he can say, look, it's like — it would be like an Alford plea in a criminal context where you say, look, if we go, you may well win. I'll provide them to you now. Let's save ourselves the time, trouble, and attorneys' fees, but I'd like to reserve my rights to get them back and suppress the evidence later on. But go ahead and have them. Well, I don't think that he did that. What he — he always — Had he done that, would that be effective? I don't think that's something the government would have agreed to, necessarily. I mean, if he — the summons enforcement proceeding is the time when he should come forward and either — if he thinks the summons is invalid, he has that opportunity. He has all of his due process rights in that proceeding, and he chose not to take them. Now, the summons — the suppression issue is getting a bit far afield from what was before the district court. What was before the district court was a simple question of once he had complied, was there anything more for the district court to do? And the answer to that question is no. When he complied, the government got all the relief that it had come to court to get. And when he complied, he essentially was saying, you know, he didn't want to pursue a challenge to enforcement. And, in fact, he argued in his brief in opposition to the petition to enforce, which was filed before he vacated the adversary proceeding, he argued that his compliance made this proceeding moot. And that's at pages 608 and 609 of the excerpts of record. And so six weeks later, when he actually provided the very final documents and had fully complied with the summons, we don't think he's in a good position at that point to say, oh, no, it's not moot anymore, you know, once he was faced with the motion to dismiss. And once he jointly with the government vacated the show cause hearing, the district court was faced with two parties who wanted nothing from it. Is there any other form in which he can ask for return and suppression? Your Honor, he has talked about, I think part of the difficulty for him is that because suppression here was voluntary, he talks about suppression in sort of classical criminal Fourth Amendment terms, like there's a fruits of the summons and there's derived leads from it. And the fact is that the documents and testimony here were obtained lawfully, and he can't unring that bell. And he mentioned the Ward case, which is discussed on pages 7 and 8 of the reply brief. And in Ward, that was a classic Fourth Amendment kind of situation, where the IRS had asked for these documents without a summons having been issued. And the taxpayer consented for five days. And then his attorney came in and said, no, wait, we don't consent, we want these returned. And the Ninth Circuit said the evidence that the government gained during those five days would not have to be suppressed later on. So I think his chief problem was that he voluntarily complied here. Can I ask you, why is that a question for this court in this case? It's not. I don't understand. Why wouldn't that be the suppression question? Why wouldn't that be for the court or judge in the other litigation that he's involved in? It is. The refund litigation, and I don't remember if there's another case. There's a tax court case. A tax court case. Yeah. So why has he – I'm sure the government's position will be that he waived his right to argue suppression in those cases, but it seems like he's done everything he could short of not complying to attempt to reserve that right. So isn't it – isn't the appropriate place to make those arguments in front of the judges in those cases? In the refund case, yes. And he's always represented to the district court that he would do that. In his response to the motion to dismiss, you know, he doesn't seek and enforce a suppression hearing in the district court case. He doesn't seek to reinstate the adversary proceeding. He wants – he indicates to the court that he will be pursuing that in the refund case, and that's at pages 104 and 115 of the excerpts of record. In his motion to reconsider, he says the same thing at pages 49 of the excerpts of record. In his reply with respect to the motion to reconsider, he says that at page 21 of the excerpts of record, and even in his opening brief, he said that everything is – he's going to pursue that in the refund case. So he certainly, you know, more than tipped his hand to the district court as to what he was going to do, we tipped our hand as to, you know, we're going to push back against that. And he – you know, in this case, things didn't fall apart until the very end, until after he had complied, and suddenly he wanted this term that didn't reserve his right necessarily, but it tried to get a condition in the order of dismissal that would cut the government off at the knees by saying you can't oppose anything that we might object to in a proceeding with respect to these documents. That was the proposed stipulation? I mean, it seems like the government – why would the government object if what he proposed was that he was simply reserving his right to challenge the voluntariness of the disclosure in this proceeding in the other cases? You're saying that he did more than that? He tried to get the government to not oppose his motion to suppress? Yes, yes. I mean, that – and that's the – well, I should say that's what he asks for in – asks from the district court. He asks for an order forever barring the government from – I had understood counsel to say that he had – that he sought a stipulation from the government before he turned the documents over. Do you know anything about that? I don't know anything about that. And it's certainly true – I mean, what he has done since the beginning of this process, from the very first correspondence with the IRS agent and through the summons proceeding, he's told the IRS agent, I'm going to comply. I'm going to comply. I'm happy to have Mr. Lee appear and produce documents and testimony. And we just need to work out the proper time and place. And then he represents to the court six times in these stipulations. I'm complying. I'm complying. I'm complying. You know, certainly it took a year and six – and there were six stipulations in the course of that year to ultimately negotiate the final documents. But he – Would the government have agreed to a stipulation prior to him turning over the documents to say, sure, go ahead and give us the documents and we'll fight about suppression and return later on? I don't – I don't think so. I don't think the government – Why wouldn't you? From his perspective and maybe from your perspective, it seems to me it looks like this. He thinks that the documents will exonerate him. He's not anxious to turn them over, but he'll turn them over to you. And if you take a look at him and say, you know something? He's right. There's nothing here. Then everybody goes home and there's no problem. And if not, then you get to fight another day and you're right back where you were. But it seems to me that you're in no worse a position and you're in somewhat a better position. He's in no worse a position and he's in a better position. So I don't see why you couldn't negotiate that one out. Well, you could negotiate it out, but the government didn't want to in this case. And I don't – and it wasn't obligated to do that. Well, I'm not sure. I'm still not – I'm still not – I still haven't seen the evidence in the record that he sought a stipulation at that time. Right. I don't know of any. I don't think that – But your answer to me was that you didn't think the government would agree to such a thing. And I'm sort of asking, why wouldn't it be in the government's interest? Well, it may in a given case. But the government didn't agree to that in this case. So that's all I can say. And it's not required to agree to that. Let me see. That makes it seem a lot less voluntary, though, doesn't it? What? Well, that you won't agree. You would not – the government would not agree to the stipulation that allows him to reserve his right to challenge the voluntariness of the production. Well, Your Honor – You say you won't agree. It could cause him some jeopardy or disadvantage him in this other litigation. So it makes it seem less voluntary. Well, let's assume that he did. That was before the government filed a motion to dismiss. He could have opposed the motion to dismiss by saying, you know what, because I'm worried about what might happen later on, I now want to challenge this, and I want the adversary proceeding to be reinstated. And he didn't do that. All he asked in the motion to dismiss was that the summons proceeding case be consolidated with the FDR proceeding and the refund case which had not yet been filed but which was filed while the motion to dismiss was still pending. He wanted those cases consolidated so that he could then deal with all of the validity of the summons in the refund case under the guise of, you know, suppression hearing. He didn't want to, you know, challenge the summons now. He wanted to basically pick his place in time as to when he challenged the validity of it. And then he also sought a conditional dismissal order barring the government from ever opposing whatever objections he might raise. And we don't think that he can get that kind of a conditional order in this case. Under this Court's precedent in U.S. v. Jose, which we've cited in the brief, in an enforcement proceeding where a taxpayer has challenged the validity of the summons, the court, the district court is not able to provide a conditional enforcement. It can only deny or grant the enforcement order. And we don't think that he should be able to get a conditional order in a — a conditional dismissal order in a case in which he hasn't challenged the validity of the summons when he couldn't get that in a case when he couldn't challenge the validity of the summons. All right. Thank you, Counsel. You've exceeded your time unless there are other questions. We'll help her. Thank you, Your Honor. I respectfully disagree with opposing counsel. 982 is self-executing. The statute says if you don't produce the records, the records — the evidence shall not be used in any subsequent proceeding by act of Congress. That's self-executing. District court has no discretion to do anything. And I think what emerges out of the argument here is the fact that my situation, our situation, is no different than when you offer evidence — when you offer evidence but make objections to evidence coming into a court proceeding and you're overruled and then you appeal. And that's what happened here. And the point I want to emphasize is this is a very compulsory proceeding. We had no choice but to turn the records over. But we did it with objection, reserving our right to suppression and return. And we failed in getting the government to stipulate. There's a written stipulation in the record. I put it in there somewhere where we are asked to have that done. And the other point is you don't look to some future proceeding because suppose there isn't a future proceeding. Then the government's got — illegally got your records. And if you don't get suppression in the summons proceeding, you — the government gets to keep the records. So just because there may be a proceeding out there somewhere in the future doesn't erase your right to have it decided now in this summons proceeding. The other point I wanted to make is we've also outlined serious due process violations. We have government attorneys in a direct conflict of interest conducting summons proceedings. We had a DOJ attorney appearing on the Treasury Department level, even though by act of Congress, Justice Department attorneys are limited to appearing in the Court of Appeals, not in — on the Treasury Department administrative level, which is where the testimony went on. And we also raised the defense of pretrial discovery, that the summons was being used like a civil deposition. And the Supreme Court in Clark says that's a pure legal defense. And it has to be — they reversed the district court for not considering that. So we've raised a lot of very serious due process and civil rights violation issues, which would justify suppression. And that's all I have, unless you all have questions. It appears there are none. Thank you. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the court.
judges: Rawlinson, Bybee, Smith